NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

HAMEED ABDULHUSSAIN, *Plaintiff/Appellant*,

*v.*

MV PUBLIC TRANSPORTATION, *Defendant/Appellee*.

No. 1 CA-CV 22-0522
FILED 6-6-2023

---

Appeal from the Superior Court in Maricopa County
CV2022-090183
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

---

COUNSEL

Law Offices of Kimberly A. Eckert, Tempe
By Kimberly A. Eckert
*Counsel for Plaintiff/Appellant*

Littler Mendelson, P.C., Phoenix
By Jacqueline Langland, R. Shawn Oller
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**K I L E Y**, Judge:

**¶1**         Hameed Abdulhussain appeals the superior court's dismissal of his complaint against his former employer, MV Public Transportation ("MV Public") for compensation for unused vacation time. Because Abdulhussain's claim for unused vacation time arises out of the provisions of a collective bargaining agreement ("CBA"), his claim is preempted under § 301 ("Section 301") of 29 U.S.C. § 185, the Labor Management Relations Act ("LMRA"). Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         The allegations in the complaint, accepted as true and construed in the light most favorable to Abdulhussain as the non-moving party, *see Albers v. Edelson Tech. Partners L.P.*, 201 Ariz. 47, 50, ¶ 7 (App. 2001), establish that Abdulhussain was employed as a driver for MV Public for almost 12 years as of July 2021. As a member of the Amalgamated Transit Union Local 1433, Abdulhussain was covered by a CBA that contains detailed provisions regarding wages, hours, overtime, and other employment terms. Article 25 of the CBA entitles employees with 10 or more years of service to 160 hours of paid vacation time each year, which could be "cash[ed] in" each year if unused. Article 25 further provides that vacation time does not accrue on a monthly basis but is awarded annually on the employee's service anniversary date.

**¶3**         Article 9 of the CBA requires arbitration of any grievance or dispute "as to any matter involving the interpretation or application of the terms" of the CBA. Under the CBA, grievances are to be submitted in writing to the company's General Manager within 10 days of the alleged infraction, to be followed by a meeting if one is requested. If not resolved internally, grievances are then referred to an arbitrator to "hear and decide the issue." The arbitration process commences with a written demand for arbitration followed by a request to the Federal Mediation and Conciliation Service for a list, from which the parties choose, of seven individuals available to serve as arbitrator.

¶4            In August 2020, Abdulhussain attempted to cash in 160 hours of unused vacation time that he claimed to have accrued. MV Public denied his request, asserting that he had accrued only 80 hours of unused vacation time. Abdulhussain spoke to MV Public's General Manager and Human Resources Director about the discrepancy but did not reach a satisfactory resolution. In June 2021, Abdulhussain "filed a claim for [his] vacation hours" with the Industrial Commission of Arizona. MV Public then "placed [him] on administrative paid leave" before terminating his employment in July 2021.

¶5            Abdulhussain later withdrew his complaint with the Industrial Commission and sued MV Public in superior court, alleging that it wrongfully failed to pay him for 160 hours of accrued but unused vacation time. Abdulhussain asked that the court "triple [his] vacation hours number of 160 to be 480 hours," presumably under A.R.S. § 23-355, which allows an employee to "recover in a civil action against [a] . . . former employer an amount that is treble the amount of the unpaid wages."

¶6            MV Public moved to dismiss the complaint under Arizona Rule of Civil Procedure ("Rule") 12(b)(5) due to purportedly insufficient service of process and, alternatively, under Rule 12(b)(6) because Section 301 preempted Abdulhussain's state law claim.

¶7            Citing both Rule 12(b)(5) and Rule 12(b)(6), the superior court granted MV Public's motion and dismissed Abdulhussain's complaint with prejudice. Abdulhussain now appeals. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶8            Dismissal under Rule 12(b)(6) is only appropriate if, as a matter of law, the plaintiff "would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012) (citation omitted). We review the dismissal of a complaint under Rule 12(b)(6) *de novo*, assuming the truth of all well-pleaded factual allegations and indulging all reasonable inferences therefrom. *Id.* at 355-56, ¶¶ 7-9. We likewise review "issues of law relating to alleged federal preemption of state law claims" *de novo*. *Conklin v. Medtronic, Inc.*, 245 Ariz. 501, 504, ¶ 7 (2018).

¶9            Section 301 of the LMRA states that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Although Section 301 "contains no express language of

preemption," *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019), the United States Supreme Court has long recognized its preemptive effect, *see Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962) (holding that Section 301 preempts state law claims because "Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules."). Specifically, the Court has long held that "any suit alleging a violation of a provision of a labor contract must be brought under [Section 301] and be resolved by reference to federal law." *Curtis*, 913 F.3d at 1151-52 (cleaned up) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)).

¶10            The Ninth Circuit has "articulated a two-step inquiry to analyze [Section 301] preemption of state law claims." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2019). First, if an "asserted cause of action involves a right . . . [that] exists solely as a result of the CBA, then the claim is preempted, and the analysis ends there." *Id.* (cleaned up). If the right "exists independently of the CBA," the court "moves to the second step," under which the state law claim is preempted if the right underlying the cause of action is "substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 1032-33 (citation omitted).

¶11            Abdulhussain argues his claim is not preempted because it is simply a "claim[] for unpaid wages" that "[does] not require interpretation of the CBA." Noting that Arizona statutorily defines "wages" as "nondiscretionary compensation due an employee in return for labor or services rendered . . . for which the employee has a reasonable expectation to be paid," *see* A.R.S. § 23-350(7), Abdulhussain asserts that the monies he sought fall squarely within this definition. Because pay for unused vacation time "was part of his compensation package," Abdulhussain asserts, he had "a reasonable expectation to be paid" for that time irrespective of whether "the vacation pay was offered as part of the collective bargaining agreement."

¶12            We disagree. Arizona statute creates no right to paid vacation time nor to exchange accrued vacation time for pay. *See* A.R.S. §§ 23-350 *et seq.* The right to paid vacation time, and to exchange accrued vacation time for pay, exists, if at all, solely by agreement of the parties. Without Article 25 of the CBA, therefore, Abdulhussain would have had no reasonable expectation of entitlement to compensation for unused vacation time. *See Mitchell v. Globe Newspaper Co., Inc.*, 602 F. Supp. 2d 258, 261 (D. Mass. 2009) (holding that Section 301 preempted a former employees' claim for unpaid vacation benefits because former employees "would not be entitled to any vacation pay absent the CBA," rendering the claim "in no sense

independent of the CBA"); *cf. Bell v. Se. Pa. Transp. Auth.*, 733 F.3d 490, 491, 494 (9th Cir. 2013) (holding that employees' wage claims under the Fair Labor Standards Act were not preempted because "[a]n employee's right to relief under [that act] . . . is distinct from an employee's contractual rights as provided in a collective bargaining agreement").

¶13 Because state law confers no right to compensation for unused vacation time absent agreement of the parties, Abdulhussain's claim for such compensation "exists solely as a result of the CBA." *See Kobold*, 832 F.3d at 1032 (citation omitted). His claim is therefore preempted under the first step of the Ninth Circuit's test, "and the analysis ends there." *Id.* (cleaned up); *see also Barton v. Creasey Co. of Clarksburg*, 718 F. Supp. 1284, 1287 (N.D. W. Va. 1989) (holding that Section 301 preempted former employees' claim for unpaid vacation benefits because right to such benefits was created by CBA, not state law); *cf. Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1061 (9th Cir. 2007) (holding that employees' claim for compensation for employer-mandated travel time was not preempted by Section 301 where "the right to be compensated for employer-mandated travel exists as a matter of [California] state law").

¶14 Abdulhussain's claim is likewise preempted under the second step of the *Kobold* test. *See Kobold*, 832 F.3d at 1032-33 (state law claim "substantially dependent on analysis of a collective-bargaining agreement" is preempted (citation omitted)). Abdulhussain asserts that he accrued 160 hours of unused vacation time under the CBA, while MV Public insists that he accrued only 80 hours of unused vacation time. Determining the "proper rate of vacation pay under [a] CBA . . . necessarily requires interpretation of that agreement." *Mitchell*, 602 F. Supp. 2d at 261. Because resolving the parties' dispute over the amount of vacation time to which Abdulhussain is entitled will require interpretation of the CBA, Abdulhussain's claim is "substantially dependent on analysis of a collective-bargaining agreement" and thus preempted. *See Kobold*, 832 F.3d at 1032-33 (citation omitted); *see also Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1064, 1066 (9th Cir. 2000) (holding that Section 301 preempted employees' claim for overtime pay equal to "time-and-a-half" of their "regular hourly rate" because employees' regular rate of pay could not be determined without reference to the CBA); *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006) (holding unpaid wage claim preempted where "the CBA contain[ed] detailed requirements for an employee to be eligible for vacation benefits" and a dispute about employee's entitlement to vacation days would "require interpretation of the CBA").

¶15 A state court is not necessarily required to dismiss a claim found to be preempted by Section 301. *See Lueck*, 471 U.S. at 220. On the contrary, because state courts have concurrent jurisdiction to hear claims arising under Section 301, *Orfaly v. Tucson Symphony Soc.*, 209 Ariz. 260, 264, ¶ 13 n.2 (App. 2004) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994)), a state court may adjudicate a preempted employment claim by treating it as arising under Section 301 and resolving it by reference to "principles of federal labor law." *Lucas Flour Co.*, 369 U.S. at 102. To do so, however, the employee must first exhaust the grievance process prescribed in the CBA unless an exception to the exhaustion requirement applies. *See Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1366 (9th Cir. 1981) (noting that, with certain exceptions, "an employee must first attempt to exhaust the grievance procedures contained in the collective bargaining agreement" before suing employer under Section 301).

¶16 Adbulhussain appears to invoke this principle on appeal, asserting that "even if this matter was preempted, . . . he must be permitted to file in court[,] otherwise[,] he has no alternate remedy available." Abdulhussain never argued to the superior court, however, that the court should continue to exercise jurisdiction over his claim despite a finding of preemption, nor did Abdulhussain argue that the circumstances under which a state court may entertain a claim arising under Section 301 are present here. Accordingly, we find that Abdulhussain has waived any argument that his claim, though preempted by Section 301, should nonetheless have been allowed to proceed. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal."); *State v. Brita*, 158 Ariz. 121, 124 (1988) ("It is highly undesirable to attempt to resolve issues for the first time on appeal, particularly when the record below was made with no thought in mind of the legal issue to be decided.").

¶17 In any event, no basis exists to find either that Abdulhussain exhausted the CBA's grievance and arbitration process or that he was, for some reason, excused from doing so. Article 9 of the CBA requires grievances to be submitted internally in writing within 10 days of the alleged infraction. If not resolved, the dispute proceeds to arbitration upon written demand. Although Abdulhussain alleges that he spoke to the authorized management personnel about his grievance with no satisfactory resolution, he has never alleged that he complied with Article 9 by submitting his grievance in writing within the prescribed period or by later submitting a written demand for arbitration.

¶18          Abdulhussain argues that he is not bound by the procedures set forth in Article 9 of the CBA because he is "no longer an employee" of MV Public. It "would not make sense," he insists, to require "a former employee" to adhere to the same contractual grievance and arbitration provisions that apply to current employees.

¶19          Applicability of the grievance and arbitration provisions of the CBA is not restricted to disputes involving current employees. On the contrary, by its terms, the CBA mandates a grievance and arbitration process for "*any* controversy . . . involving the interpretation or application of the [CBA's] terms," without exempting controversies involving former employees. (Emphasis added.) This Court must apply the CBA's express terms as written and cannot carve out exceptions not agreed upon by the parties. *See Standard Constr. Co. Inc. v. State*, 249 Ariz. 559, 562, ¶ 5 (App. 2020) ("[W]e construe contracts to give effect to the parties' intent, applying the plain contractual language when it is unambiguous."); *see also Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 205 (1991) ("[I]f a dispute arises under" a CBA with an "unlimited arbitration clause, by which the parties agreed to arbitrate *all* differences that may arise between the parties regarding the Agreement" as well as "the construction to be placed on *any* clause" of the CBA, the dispute "is subject to arbitration even in the postcontract period." (emphasis added) (cleaned up)); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 659 (1965) (rejecting "casuistic" argument that former employee was no longer bound by grievance procedure mandated by CBA).

¶20          Moreover, references in the CBA to grievance and arbitration of disputes over an employee's "dismissal" make clear that an employee's obligations under the CBA's grievance and arbitration provisions do not automatically terminate when his or her employment does. We therefore reject Abdulhussain's argument that the termination of his employment excused him from adhering to the grievance and arbitration provisions of the CBA. *See Tenn. Valley Trades and Lab. Council v. Day & Zimmerman NPS, Inc.*, 418 F. Supp. 2d 993, 1003 (M.D. Tenn. 2006) (holding that, in the absence of "an express provision" in the CBA to the contrary, "the grievance regarding [discharged employee's] termination is subject to arbitration"). Because Abdulhussain did not ask the superior court to treat his claim, though preempted, as one arising under Section 301, and because the record does not show that the circumstances necessary for the court to do so are present here in any event, the court did not err or abuse its discretion in dismissing his claim on preemption grounds.

¶21 Abdulhussain also argues that, to the extent the superior court's dismissal order was based on insufficiency of service of process under Rule 12(b)(5), the dismissal was in error because, in his view, sending the complaint to MV Public's counsel by certified mail constitutes valid service on MV Public under applicable court rules. Because we affirm the dismissal on preemption grounds, we need not address Abdulhussain's alternative challenge to the dismissal.

## CONCLUSION

¶22 We affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA